UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REGINALD L. DIFFENDERFER | ) |
| Plaintiff | ) ) ) |
| v. | ) Civil Case No. 08-1338 (RJL) ) |
| UNITED STATES OF AMERICA, *et al.*, | ) ) |
| Defendants. | ) |

MEMORANDUM OPINION
(September 21, 2009) [# 12, 19]

Before the Court is a Motion to Dismiss filed by a subset of the defendants in this medical malpractice suit: Verne Betlach, Custom RX Compounding and Natural Pharmacy, and Custom RX Compounding Pharmacy, Inc. ("Pharmacy Defendants"). The Pharmacy Defendants argue that the plaintiff's suit must be dismissed because he failed to comply with a mandatory notice provision of the District of Columbia Medical Malpractice Proceedings Act of 2006 ("MMPA").[1] Plaintiff, not surprisingly, contends that he was not required to comply with the MMPA provision. Having reviewed the relevant briefs, the caselaw, and the entire record herein, the Court concludes the plaintiff was required to provide that notice and therefore GRANTS the Pharmacy Defendants' Motion to Dismiss.

---

[1] The MMPA was enacted March 14, 2007 and is codified D.C. Code § 16-2801 *et seq.* (2008 Supp.).

1

## BACKGROUND

This case arises out of a surgical procedure which ultimately resulted in Diffenderfer losing the use of his left eye. In August 2005, Diffenderfer checked into the Veterans Administration Medical Center ("Veterans Hospital"), in Washington, DC, for cataract surgery. (Compl. ¶ 8.) During the operation, a solution named "Trypan Blue" was injected into Diffenderfer's left eye. (*Id.* ¶ 25.) The Trypan Blue used in Diffenderfer's surgery was allegedly compounded and distributed by the Pharmacy Defendants. (*Id.* ¶ 70.)

While there was nothing unusual about the way the Trypan Blue was used by the physicians who performed Diffenderfer's surgery, Diffenderfer alleges that the particular Trypan Blue they applied to his eye was tainted with the bacteria *Pseudomonas aeruginosa*. (*Id.* ¶ 68-69.) As a result, he contends, his left eye became infected within a few days of his surgery. (*Id.* ¶ 28-33.) The infection caused Diffenderfer to return to Veterans Hospital shortly thereafter for follow-up treatment. While there, he received antibiotic injections, and after his discharge, he continued with topical antibiotic treatments. (*Id.* ¶ 29-30.) Despite these treatments, Diffenderfer suffered sufficient damage to cause complete blindness in his left eye. (*Id.* ¶ 72-73.) He now wears an artificial replacement for that eye. (*Id.* ¶ 73.)

Diffenderfer filed this lawsuit on August 4, 2008, nearly three years after the date of his surgery. On September 4, 2008, the Pharmacy Defendants moved to dismiss his claims against them based on his failure to comply with the mandatory notice provision of the MMPA. Diffenderfer opposes the motion.

## ANALYSIS

The Pharmacy Defendants essentially argue that Diffenderfer has failed to state an actionable claim against them. Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissal is warranted if a plaintiff fails to comply with a statutorily mandated prerequisite to bringing suit in federal court. *See Hallinan v. United States*, 498 F. Supp. 2d 315, 316 (D.D.C. 2007). Unfortunately for Diffenderfer, he has failed to comply with the MMPA's notice requirement, and is thus legally barred from proceeding against the Pharmacy Defendants in this case.

The MMPA imposes a *mandatory* notice requirement on plaintiffs who bring medical malpractice suits. Specifically, D.C. Code § 16-2802(a) states, in relevant part, that "[a]ny person who intends to file an action in the court alleging medical malpractice against a healthcare provider shall notify the intended defendant of his or her action not less than 90 days prior to filing the action." This affirmative requirement is coupled with an unmistakable enforcement provision: "[a] legal action alleging medical malpractice *shall not be commenced* in the court unless the requirements of this section have been satisfied." D.C. Code § 16-2802(c) (emphasis added).

Clearly, under the MMPA, a plaintiff who has not complied with the notice requirement of § 16-2802(a) has not stated a claim upon which relief can be granted. The only question here, then, is whether the MMPA required Diffenderfer to notify the Pharmacy Defendants *prior* to this suit. Diffenderfer, not surprisingly, claims it does not: (1) because the MMPA intended the phrase "the court" in § 16-2802(a) to

be limited only to the Superior Court of the District of Columbia, and (2) because his suit is not a "medical malpractice" suit as that term is used in the legislation. I disagree.

Diffenderfer's first argument is frivolous at best! Jurisdiction exists in this case for his claims against the Pharmacy Defendants based on the federal diversity statute, 28 U.S.C. § 1332. When federal courts sit in diversity actions, "the law to be applied . . . is the law of the state." *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Here, Diffenderfer's surgery occurred in the District of Columbia, and the parties effectively concede that the state law that applies here is the District's. Indeed, to not enforce the MMPA's mandatory notice requirement in a diversity jurisdiction case in federal court would subvert *Erie*'s twin aims—reducing forum-shopping and avoiding the inequitable administration of laws. *See Hanna v. Plumer*, 380 U.S. 460, 468 (1965).

Not surprisingly, our Circuit Court made this very point many years ago. In *Bledsoe v. Crowley*, 849 F.2d 639 (D.C. Cir. 1988), the Circuit Court considered whether Maryland's medical malpractice law, which required plaintiffs to submit to mandatory arbitration before bringing suit, applied to a diversity case brought in our District Court. Noting that plaintiffs could otherwise easily avoid the arbitration requirement if it did *not* apply in federal diversity cases, the *Bledsoe* Court held that the Maryland arbitration provision was the type of "substantive" law that must be applied for *Erie* purposes. *See id.* at 643-44. More recently, a judge of this Court reached that very same conclusion with respect to the MMPA's notice statute. *See*

4

*Davis v. Grant Park Nursing Home LP*, --- F.Supp. 2d ---, 2009 WL 2386101 at 9 (D.D.C.) (Friedman, J.). In *Davis*, Judge Friedman rejected an argument identical to Diffenderfer's and held that "[the MMPA] cannot be construed to allow [the plaintiff] to avoid its pre-litigation requirements 'merely by filing a diversity action in federal court.'" *Id.* at 9 (quoting *Bledsoe*, 849 F.2d at 643).

Finally, Diffenderfer's alternative argument that the MMPA does not apply in this case because his is a product liability suit, not a medical malpractice suit, must also fail. (Pl.'s Opp'n at 4.) Indeed, Diffenderfer's interpretation of the "medical malpractice" phrase in the MMPA is an unreasonably narrow and hopelessly formalistic definition that is at odds with the MMPA's statutory scheme. How so?

While the MMPA does not define "medical malpractice," the fact that both "pharmacies" and "pharmacists" are explicitly included in the MMPA's definition of "health care provider[s]" is, to say the least, insightful. *See* D.C. Code § 16-2801. Surely, if the legislature intended the MMPA to apply to actions brought against pharmacies and pharmacists in their capacity as "health care provider[s]," they must have contemplated suits of this type as falling within the scope of the statute.

Indeed, the Pharmacy Defendants here were sued based on their professional medical services—compounding and dispensing the Trypan Blue solution used in Diffenderfer's surgery. Other states who have had to consider whether "compounding and dispensing medicine" falls within similar medical malpractice statutes have easily found that it does. For example, the Georgia legislature included in its statutory definition of a "medical malpractice action" any claim for damages

arising out of prescription services rendered by professionals authorized by law to perform such services. O.C.G.A. § 9-3-70. Similarly, an appellate court in Indiana held that an allergist's compounding and dispensing medicine fell within the practice of medicine, and was thus covered by the state's malpractice statute rather than product liability laws. *See Dove by Dove v. Ruff*, 558 N.E. 2d 836, 837 (Ind. Ct. App. 1990).

To date, Diffenderfer has cited no contrary legal authority to suggest that actions against pharmacies and pharmacists for harmful compounding and dispensing are not covered by this "malpractice" provision. It is not surprising! The MMPA was enacted as part of a greater statutory scheme meant to control and reduce costs associated with medical malpractice suits. *See Davis*, 2009 WL 2386101 at 8. Diffenderfer's restrictive reading of "medical malpractice" would allow plaintiffs to avoid the MMPA's requirements, and thus thwart the District's reform efforts, simply by recasting the nature of their suits. Given the MMPA's inclusion of pharmacies and pharmacists in its definition of "health care providers," the law of other states, and the purpose of the MMPA, the Court rejects Diffenderfer's attempt to impose this limit on the MMPA's scope. His failure to comply is therefore dispositive of this case as to the Pharmacy Defendants.[2]

---

[2] Diffenderfer also argues that even if the MMPA applies, its notice requirement should be waived in his case. (Pl. Mot. to Waive [Dkt. 19] at 2.) Section 16-2804(b) of the MMPA allows the notice requirement to be waived "if the interests of justice dictate," but they do not here. Diffenderfer's core contention is that it is unfair to subject him to the notice requirement because the statute's definition of "court" left it unclear whether it would be applied in this Court. But as discussed already, his reading of the MMPA is so at odds with the *Erie* doctrine, the law of this Circuit, *Bledsoe*, and the purpose of the MMPA, that he

Thus, for all these reasons, the Pharmacy Defendants' motion to dismiss is GRANTED. An appropriate order will accompany this motion.

/s/ Richard J. Leon
RICHARD J. LEON
United States District Judge

---

should have reasonably anticipated the statute would apply here. Furthermore, Diffenderfer knew the identity of the Pharmacy Defendants as early as August 2005, so there is no question whether, once the MMPA became effective, he could have complied with its terms and given the Pharmacy Defendants sufficient notice.